UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KEITH J. BROOKS,

        Plaintiff,

      v.                                               Case No. 25-cv-0133-bbc

BRIANNA SCHAUS et al.,

        Defendants.

---

## DECISION AND ORDER

---

Plaintiff Keith Brooks, an inmate at Columbia Correctional Institution, is representing himself in this 42 U.S.C. §1983 action. He is proceeding on Eighth and Fourth Amendment claims against Defendant Brianna Schaus based on allegations that she made sexually suggestive gestures while looking at his genitals during a strip search. He is also proceeding on a failure-to-intervene claim against Gene Wierzba based on allegations that he failed to stop Schaus's misconduct after Brooks informed him of what Schaus was doing. Finally, Brooks is proceeding on a First Amendment retaliation claim against Sara Fry based on allegations that she issued him conduct reports in response to his efforts to make a complaint under the Prison Rape Elimination Act (PREA). Dkt. No. 8. On July 14, 2025, Defendants moved for summary judgment on the ground that Brooks failed to exhaust the administrative remedies before he brought this lawsuit. Dkt. No. 25. For the reasons explained below, the Court will grant the motion as to Fry and deny the motion as to Shaus and Wierzba.

### PRELIMINARY MATTERS

Pursuant to the local rules, along with a motion for summary judgment, the moving party is required to file a statement of proposed material facts as to which the moving party contends

there is no material issue and that entitle it to judgment as a matter of law. Civil L. R. 56(b)(1). Per the rules, the statement of proposed facts should consist of numbered paragraphs containing short factual statements with specific references to affidavits, declarations, parts of the record, and other supporting materials. Civil L. R. 56(b)(1)(C). Defendants submitted proposed findings of fact in support of their summary judgment motion in compliance with the local rules. *See* Dkt. No. 27.

The rules require the party opposing a summary judgment motion to file a response to the moving party's proposed facts to make clear to the Court which, if any, of the proposed facts are in dispute. The opposing party must respond to each paragraph. Civil L. R. 56(b)(2)(B). Any uncontroverted fact is deemed admitted for the purpose of deciding summary judgment. Civil L. R. 56(b)(4).

Moreover, Defendants, as required by the local rules, included Fed. R. Civ. P. 56, Civil L. R. 7, and Civil L. R. 56 along with their motion for summary judgment. *See* Dkt. No. 25. Moreover, two days after Defendants moved for summary judgment, the Court entered a notice and order informing Brooks that he was required to "respond to each of the proposed findings of fact by agreeing with each fact or explaining why he disagrees with a particular proposed fact." Dkt. No. 29. The Court specifically clarified that "[i]t is not enough for Brooks to file only a declaration telling his side of the story. Civil L. R. 56(b)(2)(B) requires Brooks to respond to *each* proposed fact." *Id.* The Court warned Brooks that if he "does not respond to a proposed fact, the Court will assume that Brooks does not dispute the proposed fact and will accept the proposed fact as true, regardless of contrary statements in a declaration." *Id.*

On August 7, 2025, Brooks filed a legal brief and a declaration in response to Defendants' motion for summary judgment. Despite the Court's efforts to guide Brooks, he did *not* respond to Defendants' proposed facts, and his declaration simply rehashes the allegations in his complaint and includes no substantive statements about his efforts to exhaust the administrative remedies

2

before filing this lawsuit. Accordingly, as Brooks was warned, Defendants' proposed facts are deemed admitted for the purpose of deciding summary judgment. *See Phoneprasith v. Greff*, Case No. 21-3069, 2022 WL 1819043 (7th Cir. June 3, 2022) (holding that a district court is entitled to deem unopposed facts admitted under Civil L. R. 56(b)(4) regardless of a non-movant's detailed opposition brief, affidavit, and exhibits); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (same). With these considerations in mind, the Court turns to the substance of Defendants' summary judgment motion.

## BACKGROUND

On September 4, 2024, the institution complaint examiner at Kettle Moraine Correctional Institution received an inmate complaint from Brooks, asserting that he had been sexually harassed during a strip search on August 24, 2024. Specifically, Brooks complained that Schaus repeatedly looked at his genitals while he was being strip-searched and winked at him and licked her lips in a sexually suggestive manner. Brooks further asserted that he informed Wierzba of Schaus' actions, but Wierzba did nothing to intervene. On September 24, 2024, the institution complaint examiner recommended that the inmate complaint be dismissed, explaining that Brooks' allegations had already been reviewed by the PREA compliance manager and had been determined not to be PREA-related. The institution complaint examiner stated that because the allegations had already been reviewed by the PREA compliance manager, there was no need for a parallel investigation in the inmate complaint review system. The institution complaint examiner recommended dismissal and "forwarded [the inmate complaint] to Security Director Pollard for follow-up as deemed appropriate," clarifying that "[t]hrough submission of this complaint, the inmate's claims will be reviewed by a member of [Kettle Moraine Correctional Institution] Administration." The warden, acting as the reviewing authority, dismissed the inmate complaint on September 25, 2024. Brooks did not appeal the dismissal. Dkt. No. 27 at ¶¶2-4; Dkt. No. 28-3 at 1-3, 6-8.

3

Less than two weeks later, on October 4, 2024, the institution complaint examiner at Kettle Moraine Correctional Institution received an inmate complaint from Brooks complaining that Captain Rowe had refused to allow him to make a PREA phone call. According to Brooks, he had to wait five to six hours until after Captain Rowe was off shift before he was able to place his call. The institution complaint examiner rejected the inmate complaint on October 30, 2024, on the basis that the issue had already been addressed in Brooks' September 4, 2024, inmate complaint. Brooks did not appeal the rejection. In its screening order, the Court did not allow Brooks to proceed on a claim against Rowe based on these allegations. Dkt. No. 27 at ¶¶5-6; Dkt. No. 28-4 at 1-3, 6-8; Dkt. No. 8.

On October 8, 2024, the institution complaint examiner at Kettle Moraine Correctional Institution received an inmate complaint from Brooks about several issues, including a claim that Fry had given him two conduct reports in response to his efforts to complain about Schaus's alleged misconduct. In the body of the inmate complaint, Brooks outlined his disagreement with the conclusion that Schaus's actions did not constitute sexual harassment. He also explained that Fry had failed to properly investigate his complaint, and, finally, he noted that Fry had improperly given him two conduct reports after mischaracterizing a memo Brooks had received from the PREA compliance manager. Brooks insisted that he had been violated sexually. Dkt. No. 27 at ¶¶7-9; Dkt. No. 28-2 at 9-11.

On October 15, 2024, the institution complaint examiner returned the inmate complaint to Brooks explaining that it was not accepted because it violated Wis. Admin. Code §DOC 310.07(5) in that it contained more than one clearly identified issue. The return letter stated that Brooks was being given one opportunity to correct and resubmit the inmate complaint. He was instructed to choose one issue and to provide details for only that issue. The letter explained that including other details that are irrelevant to the chosen issue creates other issues, which is not acceptable. Dkt. No. 27 at ¶9; Dkt. No. 28-2 at 13.

4

Brooks resubmitted the same deficient inmate complaint nearly two months later, and it was received by the institution complaint examiner at Columbia Correctional Institution on December 6, 2024. The inmate complaint was referred to Kettle Moraine Correctional Institution, where it was accepted on December 9, 2024. The institution complaint examiner noted that Brooks identified the incident date as October 3, 2024, which was more than sixty days before Brooks resubmitted the rejected inmate complaint. The institution complaint examiner rejected the resubmitted inmate complaint as untimely under §DOC 310.07(2) because Brooks submitted it more than fourteen days after the events giving rise to the inmate complaint. Dkt. No. 27 at ¶10-11; Dkt. No. 28-2 at 6, 9.

On December 23, 2024, the reviewing authority received a request for review of the rejection. Brooks highlighted what he believed to be a conflict of interest between the institution complaint examiner and Fry. He also noted that Fry's mishandling of his PREA complaint had so significantly impacted him that he had to be placed on suicide observation for forty-two days. Brooks again complained of the sexual harassment he allegedly endured and explained that childhood abuse had exacerbated the impact of this incident. He concluded by arguing that, although he acknowledged that the inmate complaint was submitted outside of the fourteen-day window, §DOC 310.08(7) waives the timeframe requirements for PREA related complaints. The reviewing authority rejected Brooks' request for review on December 30, 2024. Dkt. No. 27 at ¶12; Dkt. No. 28-2 at 2-7, 29-30.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id*. All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co*., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## ANALYSIS

Under the Prison Litigation Reform Act, "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). Wisconsin has established the inmate complaint review system to review inmate grievances regarding policies, rules, living conditions, or employee actions that personally affect the inmate or institution environment. §DOC 310.06(1). In Wisconsin, an inmate is required to file an inmate complaint "within 14 days after the occurrence giving rise to the complaint." §DOC 310.07(2). Each inmate complaint must contain only one clearly identified issue. §DOC 310.07(5).

It has long been held that the exhaustion of administrative remedies must be done "properly" because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). To properly exhaust administrative remedies, prisoners must file their inmate complaints and appeals in the place, at the time, and in the manner that the institution's administrative rules

6

require. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). That said, a prisoner is not required to exhaust the administrative remedies if those remedies are not "available." *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Administrative remedies will be deemed unavailable where the process is "so opaque that it becomes, practically speaking, incapable of use." *Ramirez v. Young*, 906 F.3d 530, 538 (7th Cir. 2018). It should go without saying that "The Prison Litigation Reform Act was not meant to impose the rule of 'heads we win, tails you lose' on prisoner suits." *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) (overruled on other grounds).

Defendants Schaus and Wierzba have not carried their burden of showing that the administrative remedies were available to Brooks in connection with the claims he asserts against them. The parties agree that Brooks filed a PREA complaint asserting that Schaus had sexually harassed him. They also agree that his PREA complaint was investigated, and Brooks was informed that Schaus's alleged actions were not PREA-related. There does not appear to have been any determination on the merits of Brooks' assertions. Having been told that Schaus' alleged misconduct would not be addressed under PREA, Brooks filed an inmate complaint describing the alleged actions of Schaus and the alleged inactions of Wierzba. Confusingly, although the institution complaint examiner acknowledged that Brooks' assertions would not be addressed under PREA (because they were somehow not PREA-related), he refused to address the assertion under the inmate complaint review system, noting that there was no need for a parallel investigation. He then informed Brooks that the inmate complaint would be forwarded to the security director for follow-up as deemed appropriate.

As noted, procedures that are so opaque that, practically speaking, they become incapable of use render the administrative remedies unavailable. Here, Brooks reasonably believed that Schaus's alleged actions of winking and suggestively licking her lips while she looked at his

7

genitals were PREA-related, so he provided notice to the institution under §DOC 310.08. The PREA compliance manager decided—without explanation—that these actions were *not* PREA-related, so Brooks then provided notice to the institution under §DOC 310.07. Rather than addressing Brooks' inmate complaint, the institution complaint examiner decided no action was necessary because Brooks' claim had already been considered by the PREA compliance manager (although no decision on the merits had been reached). Brooks reasonably understood that he had done all that was required of him. He believed he had been seriously harmed, and he diligently tried to provide notice to the institution under the applicable procedures. His efforts were blocked both times on procedural grounds, while at the same time he was led to believe that the security director would take further action on the merits, as deemed necessary. Given the confusing and seemingly contradictory responses from the PREA compliance manager (not PREA-related!) and the institution complaint examiner (not appropriate for the inmate complaint review system!), the Court finds that the administrative remedies on Brooks' claims against Schaus and Wierzba were unavailable. Accordingly, they are not entitled to summary judgment.

However, the Court reaches a different conclusion with Brooks' claim against Fry. Brooks first filed an inmate complaint that included allegations against Fry on October 8, 2024. The inmate complaint was appropriately rejected for containing more than one issue in violation of §DOC 310.07(5). Rather than selecting one of the issues and refiling a proper inmate complaint, Brooks opted to re-file the same exact inmate complaint nearly two months later. This time, the inmate complaint was properly rejected because it was filed more than fourteen days after the incident giving rise to the complained about incident.

Brooks' arguments that the complaint was improperly rejected as untimely are unavailing. He first argues that he had good cause for filing the inmate complaint outside of the fourteen day-

8

window because he was on observation status for more than forty days after the inmate complaint was first rejected. Putting aside the fact that Brooks provides no evidence as to when he was placed in or released from observation status, the Court notes that, under §DOC 310.07(2), an inmate must request a good cause exception to the timing requirements *in the written complaint*. Brooks made no such request in his inmate complaint and raised the issue for the first time in his appeal of the rejection. Brooks did not comply with §DOC 310.07(2); therefore, he forfeited the opportunity to request that his late filing be accepted for good cause. *Woodford*, 548 U.S. at 90-91 (holding that the exhaustion of administrative remedies must be done "properly").

Brooks' argument that there is no time requirement for filing a PREA-related claim also fails. Under §DOC 310.08(1), an inmate may file a complaint regarding sexual abuse or sexual harassment at any time; otherwise, the time limits under §DOC 310.07 apply. Brooks did not complain that Fry sexually abused or harassed him; rather, he complained that she did not properly investigate his allegations and then retaliated against him by issuing him two conduct reports. Given that his allegations against Fry did not involve sexual abuse or harassment, the time limits under §DOC 310.07 applied. It is undisputed that Brooks did not submit his inmate complaint against Fry within the fourteen-day time limit, so he failed to exhaust the administrative remedies on his claim against her. She is therefore entitled to summary judgment.

## MOTION TO APPOINT COUNSEL

On September 2, 2025, Brooks filed a motion to appoint counsel, which the Court will deny without prejudice. Brooks attached copies of letters that he sent to a handful of lawyers in an effort to locate counsel without the Court's assistance, but no one has agreed to take his case. He explains that he is inexperienced in legal matters and is a disabled veteran.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v.*

9

*Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Accordingly, in exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

Brooks appears to have satisfied the first prong of the standard. Nevertheless, the Court will deny his motion because the Court believes he is capable of representing himself through the briefing of summary judgment. When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019).

Brooks has vigorously advocated for himself. His writing is clear and well organized. He makes logical arguments and frequently cites to relevant case law and supporting documents. Indeed, his ability to represent himself is on par with the typical incarcerated individual, nearly all of whom have limited education and mental health challenges. Given the quality of his filings to date and the straightforward nature of his remaining claims, nothing in the record suggests that Brooks lacks the capacity to respond to a summary judgment motion should Defendants choose to file one. To the extent Brooks requires additional time to comply with a deadline, he may file a

10

Case 1:25-cv-00133-BBC   Filed 10/09/25   Page 10 of 11   Document 36

motion asking for an extension of the deadline. The Court will not needlessly delay resolution of this case, but it will extend deadlines upon a showing of good cause.

If new challenges arise that Brooks thinks he cannot handle on his own, he may renew his motion to appoint counsel. If he does so, he should be specific about the challenges he faces and explain what efforts he has made to overcome those challenges.

## CONCLUSION

**IT IS THEREFORE ORDERED** that the Defendants' motion for summary judgment on exhaustion grounds (Dkt. No. 25) is **GRANTED** as to Sara Fry and **DENIED** as to Brianna Schaus and Gene Wierzba. Brooks' claim against Fry is **DISMISSED without prejudice**, and the clerk's office is directed to terminate Fry from this action.

**IT IS FURTHER ORDERED** that Brooks' motion to appoint counsel (Dkt. No. 34) is **DENIED without prejudice**.

Dated at Green Bay, Wisconsin this 9th day of October, 2025.

s/ *Byron B. Conway*
Byron B. Conway
United States District Judge